UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAEED AHMED, | No. C 08-1680 MHP |
| Plaintiff, | |
| v. | **OPINION** |
| JONATHAN SCHARFEN, Acting Director, United States Citizenship and Immigration Services, | **Re: Cross-Motions for Summary Judgment** |
| Defendant. / | |

Plaintiff Saeed Ahmed brought this action pursuant to the Administrative Procedures Act (APA) to compel U.S. Citizenship and Immigration Services (USCIS) to act upon Ahmed's adjustment of status application. Now pending before the court are plaintiff's motion for summary judgment and the government's motion to dismiss for lack of subject matter jurisdiction or, in the alterative, cross-motion for summary judgment. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiff Ahmed is a citizen of Pakistan who was granted asylum by the U.S. Immigration and Naturalization Service ("INS") on January 14, 2000. In his asylum application, Ahmed indicated that he feared further arrest and torture for his involvement in the Muhajir Qaumi Movement (MQM), which among other things represents the interests of Urdu-speaking Muslim

Pakistanis who immigrated from India to Pakistan in the wake of the 1948 partition. On February 5, 2001, plaintiff applied to USCIS, the appropriate successor agency to the INS, for an adjustment of status to lawful permanent resident, i.e., green card holder. Seven years later, on February 20, 2008, USCIS denied Ahmed's application. USCIS stated that Ahmed was inadmissible because he had provided material support to a terrorist organization. The letter denying plaintiff's application explained as follows:

> You indicated in your asylum application that you were a member of the Mohajir Quomi Movement and that you later became a member of the MQM-A. Specifically, you participated in demonstrations, participated the boycott [sic] of an election and helped move furniture out of the MQM office when you learned that it would be taken over by the MQM Haqiqi. You further indicated that you started organizing the Muttahida Quomi Movement as Altaf Hussain had promised in Rawal Pindi. . . .
>
> The Memorial Institute for the Prevention of Terrorism (MIPT) is a non-profit organization dedicated to preventing terrorism on U.S. soil or mitigating its effects. . . . According to public information on www.tkb.org, "In 2001, the MQM detonated a series of explosive devices in Karachi to protest a water shortage in the city." The Institute for Conflict Management is a non-Profit Society set up in 1997 in New Delhi . . . . According to public information on www.satp.org, "Originally formed as the Mohajir Quomi Movement (MQM), it is now split into two factions. The faction led by the founder Altaf Hussain was renamed Muttahida Quomi Mahaz and is commonly referred to as MQM(A). A breakaway faction, created in 1992, retains the original name Mohajir Quomi Movement - with the suffix Haqiqi with means real - and is commonly referred to as MQM(H). The two factions hae been responsible for several incidents of urban terrorism even as the MQM(A) participates in Pakistan's electoral process." According to the information found in the aforementioned sources, the actions and activities of MQM, MQH-H and MQM-A meet the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). MQM, MQH-H and MQM-A engage in armed conflict with opponents including the government and police, detonation of explosive devices and random attacks against civilians. . . .
>
> The evidence indicates that you engaged in terrorist activity by providing material support to the Mohajir Quomi Movement and MQM (A). In addition, you provided material support to a terrorist organization by starting to organize the Muttahida Quomi Movement in Rawal Pindi. Because your acts of material support to the Mohajir Quomi Movement, MQM (A) and the Muttahida Quomi Movement were voluntary, you are inadmissible under INA section 212(a)(3)(B)(i)(I).

First Amended Complaint (FAC), Exh. C. Section 212(a)(3)(B)(i)(I) of the Immigration and Naturalization Act (INA), codified at 8 U.S.C., section 1182(a)(3)(B)(i)(I), makes "any alien who has engaged in a terrorist activity" inadmissible to the United States. A "terrorist activity" includes "any activity which is unlawful under the laws of the place where it was

1 committed (or which, if committed in the United States, would be unlawful under the laws of
2 the United States or any State)" and which involves any one of a number of activities such as
3 hijacking, assassination, or "the use of any explosive or firearm (other than for mere personal
4 monetary gain)" with the intent to endanger an individual or cause substantial property
5 damage. See 8 U.S.C., section 1182(a)(3)(B)(ii).

On March 27, 2008, Ahmed filed his original complaint, alleging that the government's denial of his application was arbitrary and capricious under the APA, 5 U.S.C., sections 701-706. Unbeknownst to plaintiff, on March 26, 2008, the USCIS had issued an internal policy memorandum ordering the review of prior denials of certain cases decided after December 26, 2007. Def.'s Motion, Exh. B. In this memorandum, the USCIS Deputy Director established certain categories of cases that are to be placed on hold. It stated:

> This memorandum instructs adjudicators regarding the withholding of adjudication of certain cases that could benefit from the Secretary's expanded discretionary authority and to initiate a review of prior denials of certain categories of cases decided after the December 26, 2007, effective date of the Consolidated Appropriations Act of 2008, Pub. L. 100-161, 121 Stat. 1844 ("CAA").

Def.'s Motion, Exh. B at 1. The memorandum goes on to specify the categories of cases that are to be placed on hold. Relevant to the instant action, one such category was that of applicants "who are inadmissible under the terrorist-related provisions of the INA based on any activity or association that was not under duress relating to any other Tier III terrorist organization." Id. at 2 (emphasis omitted). A "Tier III" terrorist organization is one that, in the opinion of USCIS, meets the broad definition of a terrorist group set forth in the INA, but has not been officially designated as a terrorist organization by the U.S. government. See id. The government has identified the MQM as a "Tier III" terrorist organization. See Def.'s Mot. 5-6.

The memorandum ordered USCIS adjudicators to review cases that were denied or referred on or after December 26, 2007, on the basis of a terrorism-related ground of inadmissibility. The memorandum stated:

> Prior to the issuance of this USCIS-wide directive, adjudicators considered and denied or referred, in accordance with existing guidance, the cases of applicants who were found to be inadmissible or ineligible for the benefit sought based on the

3

> application of a terrorist-related inadmissibility ground for which a material support exemption was not available. Some of these denied cases fall within the above-described hold categories and, therefore, may benefit from future exemptions issued by the Secretary based on the amended exemption authority under the CAA.
>
> Pursuant to this directive, each operational component will review all cases denied or referred on or after December 26, 2007, on the basis of a terrorist-related ground of inadmissibility. Cases that were denied and fall within any of the above hold categories should be reopened on a USCIS motion and placed on hold. Applicants whose cases are reopened should receive notice of this USCIS action.

Def.'s Mot., Exh. B. In response to this memorandum, four weeks later, on April 23, 2008, USCIS reopened Ahmed's application. FAC, Exh. D. USCIS issued Ahmed a Service Motion to Reopen, which stated, in its entirety:

> The applicant filed Form I-485 pursuant to section 209(b) of the Immigration and Nationality Act. U.S. Citizenship and Immigration Services (USCIS) denied the application for reason(s) discussed in that decision.
>
> In accordance with 8 C.F.R. 103.5(a), USCIS determined that sufficient circumstances warrant reopening and/or reconsideration of the case, thereby vacating the previous denial decision. However, at this time the record is not sufficient to establish eligibility for the benefit sought. Therefore, the case has been reopened and placed on hold. No further adjudicative action will be taken at this time.

Id. A month later, on May 27, 2008, defendant filed a motion to dismiss this action based on a lack of ripeness. On July 14, 2008, the court heard the motion and granted plaintiff leave to amend his complaint in light of the reopening of his case. He filed an amended complaint on July 15, 2008. Rather than challenge a decision of the government, the amended complaint challenges the ongoing delay in finally adjudicating the case. On August 1, 2008, the court ordered the parties, per stipulation, to hold the matter in abeyance for sixty days, to allow USCIS the opportunity to complete plaintiff's adjustment of status application. Upon the expiration of the sixty days on September 30, 2008, and with no action having been taken on the application, the government filed its answer.

Plaintiff subsequently filed a motion for summary judgment, and the government filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, a cross-motion for summary judgment. The court heard oral argument on these motions on December 15, 2008.

4

LEGAL STANDARD

I.      Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004). The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. Thornhill, 594 F.2d at 733. Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2 (citation omitted).

II.     Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

1   Once the moving party meets its initial burden, the nonmoving party must go beyond the
2  pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for
3  trial." Fed. R. Civ. P. 56(e)(2).  Mere allegations or denials do not defeat a moving party's
4  allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir.1994). The court
5  may not make credibility determinations, and inferences to be drawn from the facts must be viewed
6  in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501
7  U.S. 496, 520 (1991); Anderson, 477 U.S. at 255.

## III. Administrative Procedures Act

The APA governs judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Final agency actions are defined as actions which "mark the consummation of the agency's decision making process," defined as not "merely tentative or interlocutory [in] nature," and which determine "rights or obligations" or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal quotations omitted). Ripeness of agency action for judicial review turns on the "fitness of the issue for judicial decision" and the "hardship to the parties of withholding court consideration," but in close questions, courts are "guided by a presumption of reviewability." Ciba-Geigy Corp. v. U.S. Envtl. Prot. Agency, 801 F.2d 430, 434 (D.C. Cir. 1986); Nat'l Mining Ass'n v. Fowler, 324 F.3d 752, 757 (D.C. Cir. 2003).

An agency action or decision may be set aside if the court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and a court may "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). A court's inquiry must be "searching and careful," but the standard of review is ultimately narrow. Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (internal quotations omitted). The APA does not apply to the extent that the relevant statute precludes judicial review or the relevant law commits the agency action to agency discretion. See 5 U.S.C. § 701(a)(1)&(2).

6

DISCUSSION

The government argues that the court lacks jurisdiction over this matter as a result of the INA's various jurisdiction-stripping provisions. Should the court find jurisdiction, the government argues in the alterative that the delay in adjudicating plaintiff's adjustment of status application has not been unlawfully withheld or unreasonably delayed under the APA.

I.      Jurisdiction

The amended complaint does not seek a determination that plaintiff is entitled to adjustment of status. Rather, it aks the court to order the director of USCIS to immediately adjudicate plaintiff's adjustment of status application, which plaintiff claims has been unreasonably delayed. Plaintiff contends that the court has jurisdiction pursuant to the APA and federal question jurisdiction. See 5 U.S.C. § 706; 28 U.S.C. § 1331.

The government argues that a federal district court does not have jurisdiction to entertain an action seeking to compel USCIS to adjudicate an adjustment of status application. The government admits, however, that this court has already, on several occasions, held that such jurisdiction exists. See, e.g., Kousar v. Mueller, 549 F. Supp. 2d 1194 (N.D. Cal. 2008) (LaPorte, Mag. J.); Chen v. Chertoff, 2008 WL 205279 (N.D. Cal. 2008) (James, Mag. J.); Clayton v. Chertoff, 2007 U.S. Dist. LEXIS 76514 (N.D. Cal. 2007) (Wilken, J.); Dong v. Chertoff, 513 F. Supp. 2d 1158 (N.D. Cal. 2007) (Armstrong, J.).

The government first argues that INA, section 242(g), codified at 8 U.S.C., section 1252(g), precludes the court's review of the amended complaint. Section 1252(g) provides that no court shall have jurisdiction over any claim "arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The government relies in particular upon two cases to support the proposition that Section 1252(g) bars judicial review in circumstances such as those in the instant case. The first such case, Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999), held that the federal courts had no jurisdiction to hear a selective enforcement claim brought by resident aliens claiming

7

1   they had been targeted for deportation because of their affiliation with a politically unpopular group.
2   American-Arab is inapposite, because it addressed deportation proceedings, not adjustments of
3   status. If anything, the Supreme Court's interpretation of Section 1252(g) in American-Arab
4   supports plaintiff's narrower reading of section 1252(g). Justice Scalia, writing for the Court, noted,
5   "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action'
6   decisions and similar discretionary determinations. . . ." Id. at 485. The decision to grant or not to
7   grant deferred action is discretionary, as is the decision whether to adjust status. Yet, unlike the
8   deferred action context, the act itself of rendering *some* decision regarding an adjustment of status
9   application is not discretionary: "[T]here is a difference between the INS's discretion over *how* to
10  resolve an application and the INS's discretion over *whether* it resolves an application." Singh v.
11  Still, 470 F. Supp. 1064, 1067 (N.D. Cal. 2007) (Chen, Mag. J.), citing Yu v. Brown, 36 F. Supp. 2d
12  922, 931 (D.N.M. 1999).

13  The government's reliance on Chapinski v. Ziglar, 278 F.3d 718 (7th Cir. 2002), is likewise
14  misplaced. In that case, the court held that it did not have jurisdiction to compel the INS to process
15  the petitioners' applications for lawful permanent residence. However, the petitioners' applications
16  were based upon their spouses' respective grants of deferred action and permanent residence by the
17  Attorney General under section 203 of the Nicaraguan Adjustment and Central American Relief Act
18  of 1997. Id. at 720. In that situation, the court held, to compel adjustment of the petitioners' status,
19  the court would first have to compel the Attorney General to commence removal proceedings
20  against them. Id. at 721. Since "the intent of Congress in enacting section 1252(g) was to limit any
21  judicial influence on the Attorney General's decisions regarding the commencement of removal
22  proceedings," id., citing American-Arab at 485, the court was powerless to act. In the instant case,
23  the petition for adjustment of status of plaintiff asylee does not implicate the discretion to commence
24  or not to commence removal proceedings.

25  The government also contends that INA, section 242(a)(2)(B)(ii), codified at 8 U.S.C.
26  1252(a)(2)(B)(ii), deprives the court of jurisdiction. That section specifies that no court shall have
27  jurisdiction to review "any other decision or action of the Attorney General or the Secretary of
28

8

Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." See 8 U.S.C. 1252(a)(2)(B)(ii).  The government notes that the Attorney General or the Secretary of Homeland Security "*may* adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum" under certain conditions, see 8 U.S.C. § 1159(b) (emphasis added), meaning that such act is discretionary for the purposes of section 1252(a)(2)(B)(ii).

There can be no doubt that the decision whether to give an asylee a green card is discretionary; however, as noted, the substance of the decision (whether the application is granted or not) is not the same as the question of whether there is an obligation on the part of the government to render a decision.  Indeed, the government has, in other cases, admitted that the duty to act in some way on an application for adjustment of status is a non-discretionary duty.  See Singh at 1067 ("At the hearing on the motions for summary judgment, Respondents conceded that they have a mandatory duty to act on Mr. Singh's applications.").

The government's lawyers nevertheless argue in this case that even the decision to act on an application at all is discretionary.  They assert that the Ninth Circuit's recent holding in Hassan v. Chertoff, 543 F.3d 564 (9th Cir. 2008), "control[s] the outcome here."  See Def.'s Mot. at 8.  The government seems to suggest that Hassan set forth a rule that the courts have no jurisdiction over any decision which is discretionary even in part.  Hassan does *not* control, because the plaintiff in that case was challenging not a delay in acting on his adjustment of status application, but rather the *denial of his application itself*.  See id. at 565.  Hassan sought an opportunity to respond to the reasons for the denial, and it is this over which the court found it did not have jurisdiction.  The case of Spencer Enterprises v. United States, 345 F.3d 683 (9th Cir. 2003), likewise provides no support for the government's contentions regarding 8 U.S.C., section 1252(a)(2)(B)(ii), because the Spencer court specifically reserved judgment on the applicability of that provision.  See Spencer at 692 ("Because we hold that the decision whether to issue an immigrant visa is not discretionary, we need not decide whether § 1252(a)(2)(B)(ii) applies outside the context of removal proceedings.").[2]

9

The government also argues that the statute pertaining to adjustment of status of asylees, section 1159(b), "is clearly absent of any requirement that adjustment applications be adjudicated within a finite period of time." Def.'s Mot. at 11. This is irrelevant. The APA's mandate to courts to "compel agency action unlawfully withheld or unreasonably delayed" applies to an agency action where judicial review is not precluded and the action is not committed to agency discretion. See 5 U.S.C. § 701(a)(1) & (2). For the reasons stated above, the duty to act on an application to adjust status is mandatory, not discretionary. Therefore, the APA's "unreasonable delay" standard applies.

Finally, the government argues that the decision to exempt an individual from terrorism-based inadmissibility is discretionary and not subject to judicial review. Whether or not this is the case is irrelevant, since the amended complaint does not challenge any such decision.

For these reasons, it is plain that this court has jurisdiction over plaintiff's challenge to the amount of time it has taken for USCIS to act on his application.

II.     Reasonable Delay

As noted, actions challenging delays in acting on applications to adjust status are hardly rare in the Northern District or elsewhere. However, this case presents a new twist in that the reason for the current delay is a reconsideration of an earlier denial, based upon provisions included in the Consolidated Appropriations Act of 2008 ("CAA").

The record before the court is inadequate to determine whether the delay of Ahmed's application has been reasonable. The government has argued that it is acting to determine which Tier III terrorist organizations may be exempted from terrorism-related inadmissibility, and that plaintiff might benefit from the review. But the government has presented no evidence explaining how the review is being conducted. Moreover, counsel for the government stated at oral argument that USCIS maintains a list of "Tier III" terrorist organizations used to make determinations about inadmissibility in individual cases, but the government has not produced such a list. The provision of such evidence would facilitate a determination of the reasonableness of USCIS's seven-year delay.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

To facilitate the disposition of the cross-motions for summary judgment, the court ORDERS the government to file, no later than January 26, 2009, a declaration from a USCIS official with personal knowledge of the following, explaining: (1) the broad outline of how the review of Tier-III terrorist organizations pursuant to the CAA and USCIS's March 26, 2008, internal memorandum is occurring; (2) the number of groups for which a review is completed each month; (3) how many groups have been exempted so far; (4) how many groups have not been exempted so far; and (5) how long the typical review has taken. The court also ORDERS the government to file, also no later than January 26, 2009, an authenticated copy of the Tier III terrorist organization list used by USCIS in its adjudications. The court will entertain a motion by the government to seal documents if and as necessary, pursuant to the procedures set forth in Civil Local Rule 79-5.

IT IS SO ORDERED.

Dated: January 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1. Unless otherwise noted, the background facts are not in dispute.

2. The government also cites <u>Dong v. Chertoff</u>, 513 F. Supp. 2d 1158 (N.D. Cal. 2007) (Armstrong, J.), to support the proposition that "[t]he ultimate authority to grant adjustment of status is 'unquestionably discretionary.'" Def.'s Mot. at 9.  Yet the <u>Dong</u> court nevertheless found that section 1252(a)(2)(B)(ii) did *not* eliminate its jurisdiction to review the government's failure to process adjustment of status applications in a timely manner.  <u>Dong</u> at 1165.